# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. | ) | CASE NO. 5:13-cv-2145 |
| LEATRA HARPER, et al., | ) | |
| | ) | |
| RELATORS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| MUSKINGUM WATERSHED | ) | |
| CONSERVANCY DISTRICT, | ) | |
| | ) | |
| RESPONDENT. | ) | |

Before the Court are two motions: (1) the motion of respondent Muskingum Watershed Conservancy District ("MWCD") to dismiss this *qui tam* action, pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. No. 12 ["MTD"]); and (2) the motion of relators Leatra Harper, Steven Jansto, and Leslie Harper (collectively "relators") to further amend their complaint, pursuant to Fed. R. Civ. P. 15 (Doc. No. 15 ["MTA"]). Relators oppose the motion to dismiss (Doc. No. 17 ["MTD Opp'n"]), MWCD has filed an omnibus brief in opposition to relators' motion to amend and as a reply in further support of its motion to dismiss (Doc. No. 18 ["MWCD Reply"]), and relators have filed a reply brief in support of their motion to amend (Doc. No. 19 ["Relators Reply"]). For the reasons set forth below, MWCD's motion to dismiss is granted and relators' motion to amend is denied.

## I. BACKGROUND

The background facts set forth herein are either undisputed or taken from relators' proposed Second Amended Complaint ("SAC"), which is attached to relators' motion to amend. (Doc. No. 15-1 ["SAC"].) Where appropriate, these facts are supplemented by reference to the

documents attached to and referenced by relators' First Amended Complaint ("FAC") (Doc. No. 8 ["FAC"]), and matters for which the Court may take judicial notice. Relators are "United States citizens and residents of Ohio. Leatra and Steven own property abutting Seneca Lake." (SAC ¶ 5.) MWCD "is a political subdivision of Ohio" that was "organized in 1933 to reduce the effects of flooding and conserve water for beneficial public uses under Ohio Revised Code Chapter 6101 (commonly called the Conservancy Act). The MWCD has jurisdiction in an 18-county area of Ohio including Ashland, Belmont, Carroll, Coshocton, Guernsey, Holmes, Harrison, Knox, Licking, Morgan, Muskingum, Noble, Richland, Stark, Summit, Tuscarawas, Wayne and Washington counties." (*Id.* ¶ 6.).

This *qui tam* action traces its roots to a deed that was issued by the federal government more than sixty-five years ago. On November 21, 1949, the United States Government, through the United States Army, deeded to MWCD certain land in Ohio, including acreage abutting Seneca Lake in Guernsey and Noble Counties, Leesville Lake in Carroll County, Clendening Lake in Harrison County, and Piedmont Lake also in Harrison County. (*Id.* ¶¶ 12-13; Doc. No. 8-1 ["Deed"].) The Secretary of the Army was authorized to deed this property, pursuant to 33 U.S.C. § 558(b) and 33 C.F.R. 211.10. (SAC ¶¶ 10-11.).

The Deed provided that MWCD would retain ownership of the property "so long as said described lands shall be held and utilized for recreation, conservation and reservoir development purposes[.]" (SAC ¶ 12; Deed at 132.[1]) The Deed also contained a reverter clause, providing that, if the property ceased to be utilized for these purposes, or if MWCD "alienate[d] or attempt[ed] to alienate any part or parts thereof, the title to said lands [would] revert to and

---

[1] All page numbers are to the page identification number generated by the Court's electronic docketing system.

reinvest in the United States of America." (Deed at 132.).

Between June 2011 and April 2014, MWCD entered into a series of leases conveying gas and oil mineral rights to various energy businesses for the purpose of conducting horizontal hydraulic fracturing ("fracking"). (SAC ¶¶ 15-18.[2]) The leases all involved property that was subject to the Deed. (*Id.* ¶ 19.) In exchange for the leases, MWCD was to receive more than $173,000,000, plus royalties. (*Id.* at ¶¶ 15-18.) MWCD represents, and relators do not contest, that prior to executing each lease, MWCD posted the proposed leases on its website and conducted public hearings where citizens, such as relators, were permitted an opportunity to voice any concerns. MWCD also represents, and once again relators do not contest, that the leases received extensive coverage in the media.

On September 27, 2013, relators filed the present action, asserting claims under the False Claims Act ("FCA"), 31 U.S.C. § 3729.[3] The FCA penalizes any person who fraudulently makes a monetary claim against the federal government or deprives the government of money or property. *See United States v. Hess*, 317 U.S. 537, 551-52, 63 S. Ct. 379, 87 L. Ed. 443 (1943). As amended, the relevant portions of the FCA provide for the issuance of civil penalties against anyone who "has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of

---

[2] On June 17, 2011, MWCD entered into a lease with Gulfport Energy Corporation for the subsurface mineral rights to 6,485.79 acres of land at Clendening Lake. (SAC ¶ 17; Doc. No. 8-4 ["2011 Lease"].) On May 7, 2012, MWCD entered into a gas and oil lease with Chesapeake Exploration for 3,749.089 acres of land at Leesville Lake. (SAC ¶ 16; Doc. No. 8-3 ["2012 Lease"].) On February 21, 2013, MWCD entered into a lease with Antero Resources Appalachian Corporation for mineral rights covering 6,553.3391 acres around Seneca Lake. (SAC ¶ 15; Doc. No. 8-2 ["2013 Lease"].) On April 22, 2014, MWCD entered into a second lease with Antero Resources Corporation, covering 6,363.33 acres in and around Piedmont Lake. (SAC ¶ 18; Doc. No. 8-5 ["2014 Lease"].).

[3] Relators filed a similar action in the Southern District of Ohio. *See Harper v. Muskingum Watershed Conservancy District*, Case No. 2:14-cv-02539 (S.D. Ohio). That parallel action was dismissed, upon relators' motion, on May 4, 2015. (Doc. No. 14 at 348.).

that money or property" (§ 3729(a)(1)(D), the "possession" clause), or "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." (§ 3729(a)(1)(G), the "reverse" false claims clause).

The FCA includes a *qui tam* provision that allows a private party, known as a "relator," to bring suit on behalf of the United States to allege fraud upon the government. *See* 31 U.S.C. § 3730(b). The United States has a statutory right to intervene and take over prosecution of the FCA case. If it chooses not to, as in this case, the FCA's *qui tam* provisions award successful relators of fraud who proceed independently a reasonable amount of the proceeds or settlement. § 3730(d)(2); *see United States ex rel. Dick v. Long Island Lighting Co*., 912 F.2d 13, 18 (2d Cir. 1990) ("'The purpose of the *qui tam* provisions of the False Claims Act is to encourage private individuals who are aware of fraud being perpetrated against the Government to bring such information forward.'") (quoting H.R. Rep. No. 99-660, at 22 (1986)).

The proposed SAC (like its predecessors) provides very little detail about the fraud relators allege has taken place. Essentially, it is the position of the relators that MWCD alienated or attempted to alienate the deeded property by entering into the aforementioned gas and oil leases, thereby triggering the reverter clause and entitling the federal government to immediate possession of the lands. (SAC ¶ 19.) In support, the SAC alleges that the proposed fracking underneath the affected lake beds "threaten to cause leakage of gas, fracking fluids, flowback and other toxic contaminates into the geological formations affecting the lake and damaging downstream communities." (*Id*. ¶ 21.) Relators also insist that the leases demonstrate that the deeded lands are now being used for a "purpose contrary to 'recreation, conservation and

4

reservoir development[.]'" (*Id.* ¶ 22.) Because, in their view, the reverter clause has been triggered, and MWCD has failed to return possession of the land to the federal government and has retained the income derived from the leases, MWCD has violated the FCA. (*Id.* ¶¶ 27-29, 31-33, 35-37.).

## II.  STANDARDS OF REVIEW

### A.  Motions to Dismiss Under Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil procedure tests the sufficiency of the pleading. *Davis H. Elliot Co., Inc. v. Caribbean Util. Co., Ltd.*, 513 F.2d 1176, 1182 (6th Cir. 1975). All allegations of fact by the non-moving party are accepted as true and construed in the light most favorable to that party. *See Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998) (citing *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990)). The court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

The sufficiency of the pleading is tested against the notice pleading requirements of Fed. R. Civ. P. 8. Rule 8(a)(2), which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Although this standard is liberal, Rule 8 still requires a complaint to provide the defendant with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff

5

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570 (citation omitted).

### B.      Particularity Requirement under Rule 9(b)

Contrary to relators' position, it is well settled that claims under the FCA must also satisfy the heightened pleading requirements of Rule 9(b) by stating the circumstances surrounding the asserted fraud with particularity. *See Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir. 2011) (citing *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003) (quotation marks omitted)); *see also United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551-52 (D.C. Cir. 2002) ("Every circuit to consider the issue has held that, because the False Claims Act is self-evidently an anti-fraud statute, complaints brought under it must comply with Rule 9(b).") (collecting cases). Rule 9(b) states that in "alleging fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b). "To plead fraud with particularity, the plaintiff must allege (1) 'the time, place, and content of the alleged misrepresentation,' (2) 'the fraudulent scheme,' (3) the defendant's fraudulent intent, and (4) the resulting injury." *Chesbrough*, 655 F.3d at 467 (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 503 (6th Cir. 2007)). Conditions of a person's mind—such as malice, intent or knowledge—may be alleged generally, however. Fed. R. Civ. P. 9(b).

In the context of a *qui tam* action, the Sixth Circuit has held that the complaint must set forth:

(1) precisely what statements were made in what documents or oral

representations or what omissions were made, and (2) the time and place for each such statement and the person responsible for making (or in the case of omissions not making) same, and (3) the content of such statements and the manner in which they misled [the government], and (4) what the defendants obtained as a consequence of the fraud.

*Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (quotation marks and citation omitted) (alteration in original). Ultimately, a FAC complaint that fails to comply with Rule 9(b)'s pleading requirements fails to state a claim under Rule 12(b)(6) and must be dismissed. *See Yuhasz*, 341 F.3d at 564 (citation omitted).

### C.       Matters that may be Considered on a Motion to Dismiss

In entertaining a Rule 12(b)(6) motion, the Court may consider documents that are referred to in the pleadings and are integral to the claims without converting the motion to one for summary judgment. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)); *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007) (citation omitted); *see also Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (court may consider documents that govern a party's rights and are necessarily incorporated by reference in the complaint on a motion to dismiss) (citations omitted).

A court may also take judicial notice of certain public records on a Rule 12(b)(6) motion. *See Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005) (citing, among authority, *New Eng. Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003)). Specifically, the Court may consider those public records "whose existence or contents prove facts whose accuracy cannot reasonably be questioned." *Id.* (citations omitted); *see also* Fed. R. Evid. 201 (providing that "[a] court may take judicial notice, on its own" of "a fact that is not subject to reasonable dispute because it: (1) is generally known within

the trial court's jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned.") Additionally, the "use of such documents is proper only for the fact of the documents' existence, and not for the truth of the matters asserted therein." *Passa*, 123 F. App'x at 697 (collecting cases).

### D.    Motions to Amend Under Rule 15

In addition to filing an opposition to MWCD's dispositive motion, relators have also sought leave to further amend their pleadings "to add allegations relevant to issues raised by respondent in the motion to dismiss[.]" (MTA at 359.) The Court analyzes motions for leave to amend pursuant to Rule 15 of the Federal Rules of Civil Procedure, which provides, in relevant part, that leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). A motion to amend is frequently entertained in conjunction with motions to dismiss and can serve as an effective way of curing pleading deficiencies and more quickly reaching the merits of a dispute. *See Bishop v. Lucent Techs., Inc*., 520 F.3d 516, 521 (6th Cir. 2008) (citation omitted). Nonetheless, leave to amend is appropriately denied under a number of circumstances, including bad faith, undue delay, dilatory motives, undue prejudice to the opposing party, repeated failure to cure deficiencies in prior amendments, and futility. *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 458 (6th Cir. 2013) (citation omitted). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co*., 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div*., 987 F.2d 376, 382-83 (6th Cir. 1993)). Because the two motions are inter-connected, the Court considers them together, construing the proposed amended pleading against the arguments offered in favor of dismissal.

8

### III. DISCUSSION

Relators bring two claims under the FCA: Count One alleges that MWCD "has possession, custody, or control of property or money to be used by the Government and knowingly caused to be delivered, less than all of that money or property[,]" in violation of 31 U.S.C. § 3729(a)(1)(D); Count Two asserts that MWCD "knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government[,]" in violation of § 3729(a)(1)(G). (SAC ¶¶ 31, 35.) Both claims are premised on the notion that the acts of entering into the gas and oil leases violated the Deed.

MWCD's arguments in support of dismissal can be grouped into two overarching contentions: (1) relators' claims fail to meet the pleading requirements of Rule 8 and Rule 9(b); and (2) relators' claims are precluded by the FCA's public disclosure bar. Because MWCD maintains that the public disclosure bar is jurisdictional, the Court addresses it first.

### A.  The Public Disclosure Bar

MWCD argues that relators' claims are barred because the material facts giving rise to their claims were publically disclosed prior to the filing of the present action and relators do not qualify as the original source of these facts. While the FCA encourages private citizens to institute fraud claims on behalf of the federal government, it "also seeks to discourage opportunistic plaintiffs from bringing parasitic lawsuits whereby would-be relators merely feed off a previous disclosure of fraud." *United States ex rel. Poteet v. Medtronic, Inc*., 552 F.3d 503, 507 (6th Cir. 2009) (internal quotation marks and citations omitted); *see also United States ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*, 41 F.3d 1032, 1035 (6th Cir. 1994) (While *qui tam* provisions of the FCA are designed to encourage corporate whistleblowers, a "relator must

9

be a true 'whistleblower[.]'") To accommodate these competing concerns, the FCA public disclosure bar precludes *qui tam* actions if the allegations or transactions supporting the claims were publicly disclosed, unless the individual bringing the suit was the Attorney General or was the "original source" of the information. *United States ex rel. Gilligan v. Medtronic, Inc*., 403 F.3d 386, 389 (6th Cir. 2005). To determine whether the jurisdictional bar applies, a court must consider whether a qualifying public disclosure has taken place, and second whether the subsequent legal action contains the same allegations previously disclosed. *See id*. (applying pre-2010 statutory section); *Walburn v. Lockheed Martin Corp*., 431 F.3d 966, 974 (6th Cir. 2005) (applying similar two-step process).

MWCD argues that the Court may not hear this case because "[t]he entire factual basis" for relators' suit "comes from publicly-available information[.]" (MTD at 268.) Specifically, MWCD notes that the Deed and the leases were public documents, the leases were the subject of public hearings, and the facts surrounding the leases were "widely reported in the media." (*Id*.) Continuing on, MWCD insists that relators cannot establish that they are the original source of the information because they have not alleged, nor could they allege, that they were "insiders" employed by the MWCD or any of the energy corporations who negotiated the leases with the MWCD. (*Id*. at 269.) According to MWCD, these undisputed facts serve as a jurisdictional barrier to suit.

Indeed, prior to 2010, these facts—including the administrative hearings conducted by the MWCD—would have certainly deprived this Court of subject matter jurisdiction. As initially passed, the FCA's public disclosure bar provided that public disclosures included: "allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Account Office report, hearing, audit, or

10

investigation, or from the news media[.]" 31 U.S.C. § 3730(e)(4)(A) (West 2009). The Act also specifically provided that, unless the relator was the "original source" of the information, a public disclosure by any of these enumerated means constituted a jurisdictional bar to a *qui tam* proceeding. *See id.* ("No court shall have jurisdiction over any action under this section based upon . . . ."); *Walburn*, 431 F.3d at 973 (pre-amendment public disclosure bar in FCA "limits the subject matter jurisdiction of federal courts over *qui tam* actions based upon previously disclosed information") (citation omitted).

In March 2010, the public disclosure bar was amended.[4] Among the changes, the FCA now limits prior qualifying public disclosures to those occurring: "(i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or (iii) from the news media[.]" 31 U.S.C. § 3730(e)(4)(A) (West 2014). Because the public hearings were not conducted in a federal forum in which the Government or its agent was a party, they would not seem to qualify as triggering public disclosures.

Additionally, given the fact that Congress removed the language referencing the jurisdictional nature of the bar, some courts to consider the issue have determined that the public disclosure bar is "no longer jurisdictional in nature, but rather provides a basis for dismissal." *Ping Chen ex rel. United States v. EMSL Analytical, Inc.*, 966 F. Supp. 2d 282, 294 (S.D.N.Y.

---

[4] Because this case arose after the 2010 Amendment, the FCA, as amended in 2010, applies. *See United States ex. rel. Antoon v. Cleveland Clinic Found.*, 788 F.3d 605, 614-15 (6th Cir. 2015) (2010 Amendment to FCA does not have retroactive effect) (citations omitted).

2013); *see United States ex rel. Moore v. Pennrose Props., LLC*, No. 3:11-cv-121, 2015 WL 1358034, at *5 (S.D. Ohio Mar. 24, 2015) (finding the FCA public disclosure bar to no longer operate as a jurisdictional limitation) (citing *United States ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 916 (4th Cir. 2013)); *but see United States ex rel. Beauchamp v. Academi Training Ctr., Inc.*, 933 F. Supp. 2d 825, 838 (E.D. Va. 2013) (language in 2010 Amendment that "the court shall dismiss an action" demonstrates that the public disclosure bar is still jurisdictional). The Court need not determine whether the public disclosure bar is jurisdictional because, even if it is only treated as an affirmative defense, it still necessitates dismissal of this action.

Though the 2010 Amendment changed the nature of the qualifying public disclosures, both versions provide for such disclosure through the media. It is undisputed that national and local media covered the efforts of the energy industry to court the MWCD, as well as MWCD's decision to enter into the subject gas and oil leases. *See, e.g., Muskingum Watershed Conservancy District Mulling Frack Water Deal* (June 26, 2012), http://www.centralohio.com/article/99999999/FRACKING/120527004/Muskingum-Watershed-Conservancy-District-mulling-frack-water-deal (last visited Nov. 12, 2015); *A big Utica landowner demands safety protections from driller—and gets them* (Nov. 21, 2012), http://www.mwcd.org/news/2012/11/30/national-news-story-highlights-mwcd-oil-and-gas-lease (last visited Nov. 12, 2015); The Columbus Dispatch, *Natural-gas drilling lease to pay conservancy district $ 40.3M* (Feb. 16, 2013), http://www.dispatch.com/content/stories/local/2013/02/16/natural-gas-drilling-lease-to-pay-conservancy-district-40-3m.html (lasted visited Nov. 12, 2015); CantonRep.com, *Leases fund upgrades for Muskingum Watershed Conservancy* (Apr. 28, 2013),

http://www.cantonrep.com/article/20130428/News/304289849 (lasted visited Nov. 12, 2015).[5]

Courts have repeatedly held that "information on readily accessible public websites constitutes

public disclosure." *United States ex rel. Osheroff v. HealthSpring*, Inc., 938 F. Supp. 2d 724, 733

(M.D. Tenn. 2013) (collecting cases).

   Additionally, the MWCD issued press releases before and after it entered into

each gas and oil lease and, in most cases, posted links to the lease documents, themselves, on its

website. *See, e.g., MWCD to host public meeting Oct. 17 concerning Seneca Lake* (Oct. 11,

2012), http://www.mwcd.org/news/2012/10/11/mwcd-to-host-public-meeting-oct-17-

concerning-seneca-lake (lasted visited Nov. 12, 2015); *MWCD Negotiates non-development oil,*

*gas lease at Seneca Reservoir* (January 18, 2013),

http://www.mwcd.org/news/2013/01/18/mwcd-negotiates-non-development-oil-gas-lease-at-

seneca-reservoir (lasted visited November 12, 2015); *MWCD negotiates Piedmont oil, gas lease*

*that minimizes impacts* (Mar. 21, 2014), http://www.mwcd.org/news/2014/03/21/mwcd-

negotiates-piedmont-oil-gas-lease-that-minimizes-impacts (last visited Nov. 12, 2015); *Piedmont*

*Reservoir Lease*, http://www.mwcd.org/flood-reduction-and-conservation-

stewardship/conservation/piedmont-reservoir-lease (lasted visited Nov. 12, 2015). These press

releases, available on MWCD's publicly accessible website, also qualify as public disclosures by

the media. *See Ping Chen*, 966 F. Supp. 2d at 297 (news releases constituted disclosures under §

---

[5] Specialty media outlets also carried stories of the gas and oil leases that are the subject of the present action. *See,*
*e.g.*, Shale Ohio, *Muskingum Watershed Conservancy District seeks comments on oil and gas lease* (Jan. 23, 2013)
http://www.shaleohio.com/details.aspx?id=42397 (lasted visited Nov. 12, 2015); Shale Gas Reporter.com,
*Muskingum Watershed Conservancy District Receives $6,200 an Acre* (Feb. 18, 2013),
http://shalegasreporter.com/news/muskingum-watershed-conservancy-district-receives-6200-an-acre/1580.html (last
visited November 12, 2015); Shale Ohio, *Muskingum Watershed District votes to lease land, grant right-of-way to*
*oil and gas companies* (Aug. 31, 2012), http://www.shaleohio.com/details.aspx?id=42242 (last visited November
12, 2015); The Press News.com, *MWCD Negotiates Piedmont oil, gas lease that minimizes impacts* (Apr. 2, 2014),
http://www.the-press-news.com/local%20news/2014/04/02/mwcd-negotiates-piedmont-oil-gas-lease-that-
minimizes-impacts (last visited November 12, 2015).

3730(e)(4)(A)(iii)); *United States ex rel. Green v. Serv. Contract Educ. & Treasury Trust Fund*, 843 F. Supp. 2d 20, 32 (D.D.C. 2012) (union's publicly accessible website considered a posting by news media under the FCA public disclosure bar); *see generally United States ex rel. Doe v. Staples, Inc*., 932 F. Supp. 2d 34, 39-40 (D.D.C. 2013) ("courts broadly construe the channels of public disclosure . . . to include readily accessible websites"). The Court takes judicial notice of these public postings, along with the news stories, and finds that there was a public disclosure under the FCA. *See In re Unumprovident Corp*., 396 F. Supp. 2d 858, 876 (E.D. Tenn. 2005) (In securities fraud class action, proper for court to take judicial notice of press releases); *see, e.g. United States ex rel. Dingle v. BioPort Corp*., 270 F. Supp. 2d 968, 975 (W.D. Mich. 2003) (appropriate to take judicial notice, under Fed. R. Evid. 201, of public documents from reliable sources on the internet); *see also Gilligan*, 403 F.3d at 390 (public disclosures from different sources can, taken together, trigger the public disclosure bar) (citation omitted).

Having determined that there were qualifying public disclosures,[6] the Court directs its attention to the second half of the inquiry and considers whether these disclosures involved "substantially the same allegations or transactions as alleged in the action[.]" 31 U.S.C. § 3730(e)(4)(A). There can be no doubt that the pivotal allegations in the SAC are substantially the same as the factual underpinnings of the news stories and press releases. Indeed, the media was reporting on the very same transactions that form the core of relators' FCA claims—the four gas and oil leases executed by MWCD. The Court is entirely satisfied that the second half of the public disclosure bar test is met.

---

[6] In reaching this conclusion, the Court does not rely upon the unauthenticated documents attached to MWCD's motion to dismiss which, in any event, could not be considered on a Rule 12(b)(6) motion. Additionally, the Court does not rely on the factual information contained within the news releases and media stories.

Consequently, the FCA claims "shall be dismissed" unless the relators are the "original source" of the information. § 3730(e)(4)(A). The 2010 Amendment also modified the definition of the term "original source" which is now meant to refer to a person who "either (1) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section." 31 U.S.C. § 3730(e)(4)(B).

The SCA contains only two allegations that are relevant to this inquiry. First, relators allege simply that "Relators are the original source of these allegations." (SAC ¶ 2.) Of course, the Court need not accept this factually deficient legal conclusion as true in defense of MWCD's dispositive motion. Second, and with as little factual content, relators allege that "Relators provided the government with a confidential disclosure statement and exhibits to substantiate the allegations." (SAC ¶ 3.) Without some indication as to the content and date of this disclosure or the basis for the relators' knowledge, this conclusory allegation fails to permit the Court to test whether relators qualify as original sources under the FCA. Moreover, inasmuch as the SAC represents the second attempt at amending their complaint allegations, and was offered for the specific purpose of addressing the pleading deficiencies identified in MWCD's dispositive motion, the Court finds that it would be futile to permit relators to further amend.

It is clear from the foregoing that relators are not the model whistleblowers contemplated by the FCA—individuals who discover and expose hidden fraud. Rather, their claims are based entirely on their analysis of the legal consequences of very public events. The SAC rests solely on factual allegations that were the subject of public disclosures, and relators

15

have failed to set forth factual allegations that, if believed, would establish that they voluntarily disclosed the information prior to the public disclosures or are in possession of information from an independent source that materially adds to the understanding of the alleged fraud. Accordingly, the Court finds that the public disclosure bar requires dismissal.

### B.  Reverse False Claim under § 3729(a)(1)(G)

Even if relators were not barred from bringing a *qui tam* by prior public disclosures, their claims would not survive MWCD's Rule 12(b)(6) attack. In Count Two of the SAC, relators allege that the MWCD engaged in fraud by knowingly failing to return property belonging to the government. This type of claim, commonly referred to as a "reverse" false claim, differs from the traditional FCA claim because it involves fraudulent action designed to avoid having to pay the government rather than fraudulently presenting a false claim to the government for payment. *See Pencheng Si v. Laogai Research Found.*, 71 F. Supp. 3d 73, 88 (D.D.C. 2014) (explaining the unique contours of the FCA reverse false claim) (citing *United States v. Caremark, Inc*., 634 F.3d 808, 814-15 (5th Cir. 2011)).

On May 20, 2009, Congress enacted the Fraud Enforcement and Recovery Act of 2009 ("FERA"), which had the effect of modifying the scope of FCA reverse false claims in two important ways.[7] First, the amendment eliminated the requirement that a person make or use a false record or statement to avoid, conceal, or decrease an obligation to the United States, by providing that an individual also violates the law when he "knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the

---

[7] "Section 4 of FERA provides that the FCA amendments apply to conduct occurring on or after the date of enactment (May 20, 2009)." *Sanders*, 703 F.3d at 934. Because the conduct giving rise to the present litigation—the filing of the gas and oil leases—took place after the date of enactment, these amendments properly govern this case.

Government[.]" 31 U.S.C. § 3729(a)(1)(G). Second, the 2009 amendment broadened the term "obligation" by defining it as a "an established duty, whether or not fixed, arising from an express or implied contractual, guarantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment[.]" § 3729(b)(3).

MWCD argues that relators have failed to sufficiently plead an "obligation" owed to the federal government because "[t]he 'obligation' necessary to invoke [§ 3729(a)(1)(G)] is limited to the present, existing duty to pay the government and does not cover 'potential' or 'future' obligations." (MTD at 260, citing *United States ex rel. S. Prawer v. Verrill & Dana*, 946 F. Supp. 87, 95 (D. Me. 1996)); *see also* MWCD Reply at 384 ("there must be an existing legal duty to pay or deliver property to the Government"). MWCD stresses that there has been no adjudication that the reverter clause has been triggered, and the possibility that it may have to return the deeded property at some time in the future is insufficient to demonstrate an "established duty" or "obligation" under the FCA. (MWCD Reply at 386.).

Even applying the narrower pre-FERA view of an "obligation" under the FCA, it is unlikely that MWCD's argument would have carried the day. In *Am. Textile Mfrs. Inst., Inc. v. The Limited, Inc*., 190 F.3d 729 (6th Cir. 1999), the Sixth Circuit addressed the meaning of the term "obligation" under the prior version of the section—§ 3727(a)(7)—and held that the term "certainly includes those arising from acknowledgements of indebtedness, final judgments, and breaches of government contracts[.]" *Am. Textile*, 190 F.3d at 741. Applying *Am. Textile*, the court in *United States ex rel. Landis v. Tailwind Sports Corp.*, 51 F. Supp. 3d 9, 56 (D.D.C. 2014), found defendants' contractual duty to reimburse the government when they allegedly breached certain sponsorship agreements qualified as a "obligation." In so ruling, the court

17

reasoned that "the Sixth Circuit's inclusion of both 'final judgments' and 'breaches of government contracts' [in *Am. Textile*] as 'obligations' necessarily means that the court was referring to *alleged* breaches of government contracts, for if the court had intended to refer only to breaches that have resulted in a court awarding a judgment, it would have been redundant for the court to separately refer to final judgments in addition to breaches of contracts." *Id.* (citing *Am. Textile*, 190 F.3d at 736) (emphasis in original).

Further, Congress has made clear that the post-FERA definition of "obligation" is sufficiently broad to encompass breaches of contract, whether or not they have been litigated to a final judgment. The Senate Judiciary Committee Report, S. Rep. No. 111-10 (Mar. 23, 2009), indicates that FERA

> addresses [the] current confusion among courts that have developed conflicting definitions of the term "obligation" in Section 3729(a)(7). The term "obligation" is now defined under new Section 3729(b)(3) and includes fixed and contingent duties owed to the Government-including fixed liquidated obligations such as judgments, and fixed, unliquidated obligations such as tariffs on imported goods. It is also noteworthy to restate that while the new definition of "obligation" expressly includes contingent, non-fixed obligations, the Committee supports the position of the Department of Justice that current section 3729(a)(7) speaks of an obligation, not a fixed obligation. By including contingent obligations such as, implied contractual, quasi-contractual, grantor-grantee, licensor-licensee, fee-based, or similar relationship, this new section reflects the Committee's view, held since the passage of the 1986 Amendments, that an "obligation" arises across the spectrum of possibilities from the fixed amount debt obligation where all particulars are defined to the instance where there is a relationship between the Government and a person that results in a duty to pay the Government money, whether or not the amount owed is yet fixed.

S. REP. 111-10, 14, 2009 U.S.C.C.A.N. 430, 441 (internal quotation marks and footnotes omitted).

The SAC alleges that MWCD violated the terms of the 1949 Deed by entering into the subject gas and oil leases, and that, as a result, it owed a duty under the reverter clause to

return the property. (SAC ¶ 27.) The SAC further alleges that MWCD alienated the deeded land by entering into the leases, also in violation of the Deed. (*Id.* ¶¶ 15-19.) These allegations are sufficient to plead an "obligation" under 31 U.S.C. § 3727(a)(1)(G).

This does not, however, end the inquiry because relators must also come forward with factual allegations that, if believed, would support their conclusory allegation that MWCD "knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government." (SAC ¶ 35; *see* 31 U.S.C. § 3727(a)(1)(G).) While they may allege the scienter component generally, relators must still come forward with factual allegations indicating what action MWCD took to conceal or avoid an obligation to the federal government. *See United States ex rel. Prather v. Brookdale Senior Living Cmty., Inc.*, No. 3:12-CV-00764, 2015 WL 1509211, at *16 (M.D. Tenn. Mar. 31, 2015) (noting that a reverse false claim requires allegations of both an obligation owed and actions untaken to avoid paying the obligation); *see also United States ex rel. Dennis v. Health Mgmt. Assoc., Inc.*, No. 3:09-cv-00484, 2013 WL 146048, at *18 (M.D. Tenn. Jan. 14, 2013) (applying former § 3727(a)(7) and finding complaint deficient, in part, for failing to provide specific factual allegations about what fraudulent record or statement the defendants made that resulted in an avoidance or decrease of an obligation to pay the government).

The SAC offers no factual allegations that MWCD was aware of a potential obligation but knowingly elected to do nothing or took steps to avoid payment. *Cf. United States ex rel. Kane v. Healthfirst, Inc.*, No. 11 Civ. 2325(ER), 2015 WL 4619686, at *17 (S.D.N.Y. Aug. 3, 2015) (complaint adequately stated a FCA reverse false claim where it alleged that the software glitch that purportedly caused the improper Medicaid billing was brought to defendant's attention but nothing was done to correct it); *Landis*, 51 F. Supp. 3d at 60 (allegations that

defendants made false statements denying blood doping activities to conceal that they had violated sponsorship agreements with U.S. Postal Service sufficient to demonstrate fraud). Indeed, the undisputed fact that the Deed, the leases, and the hearings on the leases were a matter of public record is entirely inconsistent with the existence of the type of concealed fraud for which the *qui tam* provision in the FCA is meant to address. Instead, the SAC rests exclusively on allegations that MWCD violated the Deed and retained the deeded land and the revenue generated from the leases.[8]

At most, the SAC has merely alleged a breach of the Deed, and it is well settled that "a mere breach of contract does not give rise to liability under the False Claims Act."[9] *United States ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818, 824 (7th Cir. 2011) (stressing the significance of defendant's certification that its invoices were in compliance with government regulations, and noting that "[i]f the breaching party falsely claims to be in compliance with the contract to obtain payment . . . there may [be] an actionable false claim") (citation omitted); *see United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 383 (4th Cir. 2008) ("breach of contract claims are not the same as fraudulent conduct claims, and the normal run of contractual disputes are not cognizable under the [FCA].");  *Glynn v. EDO Corp.*, 710 F.3d 209, 218 (4th Cir. 2013) (noting that defendant "may not have submitted a finalized QAP to the Government Customer in strict accordance with its contractual obligations. But, every contract breach is not a basis for a FCA action.") (citing *United States ex rel. Owens*

---

[8] Relators also allege that MWCD failed to report the alleged obligation as a liability under Ohio Adm. Code § 117-2-02 (SAC ¶ 28). That regulation merely requires all public offices to maintain an accounting system that adequately accounts for all assets and liabilities. Indeed, this same complaint allegation provides that MWCD reported the income derived from the leases in its annual reports, an act inconsistent with concealing an obligation. (*Id.*) In any event, a technical violation of a statutory accounting practice, without factual allegations of knowing concealment or avoidance, brings relators no closer to alleging fraud with particularity.

[9] The Court makes no determination as to whether MWCD breached the Deed by entering into the gas and oil leases.

20

*v. First Kuwaiti Gen. Trading & Contracting Co.*, 612 F.3d 724, 726 (4th Cir. 2010) ("Congress crafted the FCA to deal with fraud, not ordinary contractual disputes.")).[10] Because relators have failed to allege a reverse false claim with particularity, it is subject to dismissal.

### C.  Possession Claim under 31 U.S.C. § 3729(a)(1)(D)

Relators' "possession" claim suffers from similar deficiencies. Once again, relators rely on the same allegations that MWCD violated the terms of the Deed to suggest that it is now in possession of government property. These allegations of breach of contract—without some factual contentions setting forth fraudulent conduct—stop short of establishing a FCA claim.[11] *See United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1056 (9th Cir. 2011) ("But to commit conduct actionable under the FCA, one must, in some way, falsely assert entitlement to obtain or retain government money or property.").

### IV. CONCLUSION

Because relators' claims are barred by the public disclosure doctrine, and because relators have failed to plead fraud with particularity under Rules 8 and 9 of the Federal Rules of

---

[10] Relators have sought leave to file supplemental authority on the subject of contract breach. (Doc. No. 21.) Relators bring to the Court's attention the recent decision of the Ohio Supreme Court in *Chesapeake Exploration, LLC v. Buell*, No. 2014-0067, 2015 WL 6742183 (Ohio Nov. 5, 2015), presumably because it held, in part, that a gas and oil lease constitutes a fee simple determinable interest in the mineral estate of land. This opinion, however, is of little consequence to the present dispute. The Ohio Supreme Court, in *Chesapeake Exploration*, was asked to consider what effect the unrecorded expiration of an oil and gas lease would have on the forfeiture provision in the Dormant Mineral Act, Ohio Rev. Code § 5301.56. The decision did not address the question of whether a gas and oil lease constitutes an alienation of the land under a deed of property under 33 U.S.C. § 558(b). That said, even if the decision could somehow be construed as supporting such a conclusion, reliance on it would still not elevate relators' claims beyond a simple breach of the Deed.

[11] The FAC also contained a conspiracy claim that is omitted from the proposed SAC. While the Court presumes that relators abandoned their conspiracy claim in the face of MWCD's motion to dismiss, the Court observes that the conspiracy claim, as previously alleged, is also subject to dismissal. The existence of a conspiracy is not supported by factual allegations in the FAC. In fact, the claim did little more than parrot the language of the relevant statutory provision. Additionally, the FAC fails to allege that MWCD conspired with another, and it is well settled that an individual—even a corporate individual—cannot conspire with itself. *Pencheng*, 71 F. Supp. 3d at 98 (intra-corporate conspiracy doctrine precluded conspiracy claim under FCA). The conspiracy claim in the FAC, therefore, is also dismissed.

Civil Procedure, MWCD's motion to dismiss (Doc. No. 12) is granted. Moreover, because it would be futile to permit any further amendment of the pleadings, relators' motion to amend (Doc. No. 15) is denied. This case is dismissed.

**IT IS SO ORDERED**.


Dated: November 25, 2015

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**